The next case on the calendar this morning is number 19-1645, United States v. Reichberg. Is everyone there okay? I'm hearing beeps. Your Honors, this is John Marengolo and Clara Cahos. Good morning. Good morning. You can begin, Mr. Marengolo. Okay, thank you very much. I would like to start with the Curcio issue. Respectfully, we request the Court to remand this case for a new trial because Mr. Reichberg's constitutional rights were violated. During the course of his representation, trial counsel was representing him, as well as Murray Huberfeld, who was a co-conspirator on a sister case. I think the paramount issue to really know of the unwaivable conflict was that Mr. Huberfeld and Jeremy Reichberg, their conduct was admitted pursuant to 404B, which we have in our brief as abuse of discretion by the District Court. With that said, the Huberfeld representation, as well as the Reichberg representation, there should have been a hearing, which we respectfully submit probably could have been unwaivable at that time. The government concedes in their opposition that this Court could remand the case for a limited inquiry on the Curcio issue. We respectfully submit that that has passed. There was a Curcio violation, and it warrants a reversible error on the District Court. There was no such hearing. It was known by the District Court and the U.S. This is Judge Carney. Could you list, please, the effects that you believe the conflict had on Mr. Reichberg's counsel's performance? Well, I think prior to the performance at trial, Your Honor, I think if Mr. Reichberg had conflict-free counsel, there are other opportunities that he may have utilized. There were other things that he could have done with conflict counsel. What does that mean? That means you could have cooperated. If you have the same counsel for both co-defendants, you can't cooperate against one another, both Mr. Huberfeld and Mr. Reichberg. Without conflict-free counsel, which various hearings in the District Court on the Curcio, that is that you would have interest of justice for each particular defendant. So I think not having conflict-free counsel at that time precluded Mr. Reichberg from having the opportunity to do that. In addition to that... We're reviewing this for plain error, correct? There was no objection made below. There was no what? No objection made below by anybody. We're reviewing this for plain error, is that correct? Yes. No post-trial motion. Nothing was done below to raise this issue. Yes, it was not raised below at all. Okay. But it was disclosed during a hearing that trial counsel was representing Mr. Huberfeld. The same U.S. attorney on both Reichberg, trial counsel for U.S. attorney on Reichberg and Huberfeld, was aware of the representation. Trial counsel for Reichberg signed the protective order in Huberfeld and stated on the record that she was helping out on the case. She's an attorney, so I think there should have been a hearing. The government should have written a Curcio letter like they always do. Or the District Court should have acknowledged the dual representation. This was before the same district, Judge? The case, I believe the Huberfeld case was both in front of Judge Carter and Judge Hellerstein. The Reichberg case was in front of Judge Woods. But the U.S. attorney was on both the Huberfeld and the Reichberg case. Oh, I see. As far as the Huberfeld representation was concerned, I don't know how to pronounce her name. I believe it's Mrs. Necklace. Necklace, okay. Mrs. Necklace, she was not counsel of record in the Huberfeld case, right? She was not counsel of record in the Huberfeld case, no. But I think what's paramount is her representations at the District Court level. The U.S. attorney being aware of the signature on the protective order as well as the representations on the record at the trial court level. And I think that is extremely significant, although there was no record of being counsel put in the public record, but it was known. Okay. Could you move on to your other arguments? Yes? I'm just suggesting that you move on to your other arguments. Okay, the next issue is the Fourth Amendment issue, of which Judge Woods, I guess, punted to this court, saying at the District Court that he would leave it up to the Second Circuit to decide. That is Mr. Reichberg's Fourth Amendment issue. It was also violated. The government seized all the about 30 technological, from computers to cell phones, iPads, what have you. That also, the motion that we just discussed, the Curcio motion, was turned over without a protective order in the Huberfeld case. And we believe that in this day and age, this being a case of first impression, the technological advances that's coming down with just how the tech companies are handling everything and how an individual has their entire life on technological or cell phone or computers, we think this is a cutting-edge issue that this court should decide what the remedy was for this violation that Judge Woods acknowledged. You know, I'm not smarter than Judge Woods. You don't have any support for that. It sounds like you're saying this is because this is an issue of first impression. Is there any analogy that you can draw for us or any kind of support whatsoever that we can look to, or is this just something you'd like us to make up? Well, no, I wouldn't want you to make it up. I would like you to go to what Judge Woods said on 71-24, where he decided, declined to make a specific finding and denying Reichberg's suppression motion, and 71-25, where he basically said that the district court specifically stated it would leave this issue to the government's conduct to the Second Circuit. You know, we believe, Your Honors, that it was a violation of the Fourth Amendment, clear, and there should have been a Taint Team, there should have been a protective order, and you cannot just disseminate what you have, you know, without that. You know, there potentially was a lot of improprieties by the trial counsels looking at potential privilege materials and so forth and so on. So, you know, I'm not smarter than anyone on this phone call, so, you know, I think I really would leave it up to you, like Judge Woods said. Lastly, if I can move on to the next issue, there's no quid pro—Honest Services must be vacated, count one and two. There was no quid pro quo, and there was no official act. The government has conceded there's no official act. There was no agreement between Reichberg and the police, and the acts that the government presented to the jury were not official acts per se. They have—yes? Let me interrupt. This is Judge Carney. Let me interrupt. Why isn't getting a gun license issued an official act? The testimony says that they were not issued a gun license. They just put Mr. Reichberg's file on top of the—you know, because of Mr. Grant, who was, in fact, acquitted on all charges. So, I don't respectfully—I respectfully submit that the jury disregarded the gun license. There was evidence in the case pursuant to a stipulation— Getting a gun license issued is an official act. That isn't something—the way there was at McDonald's, just like a meeting. It is a formal action taken by the police authorities. Well, getting— Same as, you say, the— Your Honor, getting a gun license issued that you qualify for, I don't believe, is an official act. Well, it seems to me it's not a—it's something that only someone with authority can do. Isn't that correct? Yes, it goes through a process through the licensing division. But there was no—there was—you know, Mr. Reichberg actually qualified for the license. What did happen, Your Honors, is that his file was taken from below the pile to put on top of the pile. It wasn't issued because he did not qualify. I think in the testimony on 1906, it says, you know, they understood, meaning the cooperating witnesses at the licensing division, they understood that Reichberg was Jimmy Grant's guy. You know, I think, you know, in the term of art in the police department, Jimmy Grant's guy is, you know, you could— That's, you know, I guess it's a, you know, it's like a local New York thing. It's like, you know, a friend. That's Jimmy Grant's friend. So it's not an official act by taking one—a license from the bottom of the pile to put on the top and go to federal prison for. You know, the other— It's about the official acts that are alleged in terms of making sure that Mr. Zanke got a DAT as opposed to some other punishment, and Mr. Zankari on two occasions after getting arrest, phone calls were made, and he—you know, there was pressure put on to get him a DAT as opposed to something more severe. Well, Your Honor, if you look at page 7 and page 8 in our brief, we cite the transcript. There was no pressure whatsoever to get a DAT. That was the remedy. That is—the individual was charged with what's called a mandatory DAT. So it doesn't—you know, anyone can call down to the precinct and ask what's going on. You know, and in fact, that's exactly what happened. But there was no special benefit given because, you know, if you read the testimony that I cited on page 7 and 8, you know, with Zankari, and that it shows that, you know, there was nothing—no special, you know, official act given. Somebody called down and says, what's going on? And then he's going to get a DAT whether someone called or someone didn't call. So you would say that they have to do with an official act, but you would say no official act was made in response—no special official act, I suppose. Nothing out of the ordinary was done. Nothing out of the ordinary was done. And if someone called down and said, could you give the guy a DAT for this infraction, that's exactly what's mandatory to do. You know, it doesn't matter if he said, give him a DAT. That's what's going to happen anyhow. And what is your characterization of Mr. Harrington's arrangement for an NYPD boat to give rides to Mr. Reichberg and his guests and to have the helicopter fly over? You would just say those aren't official acts. That's just a courtesy. That's a courtesy. If you look at page 10 and page 11, I cite testimony from both the individuals who testified for the government. You know, having a flyover, I believe it was Jim Cohen who testified, I'm not 100% sure. But I believe the testimony was that if a helicopter's in the air and a community's having a function, whatever community it may be, whatever religious or creed, and someone's asked to fly over, they will do that. And actually, Mr. Cohen, I believe, says that he encourages that because it helps the pilots, you know, because they're just circling around the city. So I think if we look at that also, you would see that. And the boat ride, it was a community event. There was testimony to that that there was a community event. And that happens frequently. I mean, it's what's called, Your Honor, it's called community policing. You know, that is what has been encouraged for decades. And finally, having a police officer drive Mr. Reichberg's nurse to a nail salon. Yes, we believe that, Your Honor, was improper. But as an official act, you know, what could they, there is no agreement. That was asked and it was given. And we believe that was improper. And what usually happens for a police officer, they get 10 days vacation, I guess, docked from the internal affairs. It's not a federal crime. It does not rise to an official act under the federal law. Okay. You've retained three minutes for rebuttal. Yes. And you have just under a minute left. Is there something you'd like to say before? There's a few things that I'd just like to go through. I think that we were precluded, he was precluded, Mr. Reichberg, at trial for calling experts, specifically a police expert, which could have explained to the jury certain, you know, what happens with community policing. And we think that was detrimental to our case. In addition to that, he was going to call a Rabbi Gluck as an expert also, a world-renowned, you know, someone member from the community for, you know, he was the former deputy mayor of our great city. And he was precluded from doing that also. That, we believe, was abusive discretion because if the jury heard those two experts, we believe that the result would have been different. Thank you so much for your time.  You'll have three minutes for rebuttal. Ms. Lonergan. Yes. Thank you, Your Honor. My name is Jessica Lonergan. I represent the United States on this appeal, as I did at trial. And I'd like to start with one of the issues that the panel spent the most time on with my opposing counsel, which is the question of whether the government sufficiently proved that there were official acts at trial. And I would submit that the government definitely did. And I want to walk through both. If it's helpful, I'd like to walk through the framework that was set forth in McDonnell and how that was presented to the jury. So the jury instructions here hewed incredibly closely to McDonnell. In other words, what Judge Woods did is that he essentially provided the jury with the McDonnell framework and suggested that there were six kinds of official acts that the government thought were presented to the jury as official acts. And that's the appropriate procedure as set forth in McDonnell, that the question of whether there was official action should be presented to the jury. The framework, as I know this court is well aware, is that in set forth in McDonnell is that to find official action. First, you have to identify a question or a matter that is either that is a pending or may be by law be brought before a government agency. And B is a formal exercise of government power that is focused and concrete. And then the official must make a decision or take action on that question or matter or agree to do so or pressure or advise someone else to do so. I'd like to interrupt you here because I'm having difficulty understanding why the gun permit was a specific and focused question or matter that was pending. You know, it didn't do all the gifts. Most of the gifts seem to have been made in 2013. And the application for gun license was in August of 2014. I'd like to hear your comments also about whether any favoritism was shown other than possibly in timing, even if we conceive of it as an official act. But how is that a specific focus question or matter that was, you know, on anyone's horizon if there was no application even pending with the gifts were made? Well, your honor, there was an ongoing pattern of gifts by both Reckness and Breitbart to the police officers, including throughout the entire time period that was charging this conspiracy. Excuse me, isn't your position here, correct me if I'm wrong, that this is an as circumstances arise case, the silver case? In other words, you're being paid money in order to do the things that we ask as circumstances arise. And that's definite enough under McDonald in the wake of silver. Yes, your honor. So yes, this isn't as opportunities arise case as that doctrine was clarified by silver. And so under the silver analysis, which is two part, first is whether the jury was properly instructed as set forth in silver. And then second, whether there was sufficient evidence to find the required particularity in silver. And if I may return to that in just one moment, because I do want to answer the other pending question about favoritism that was shown in the case of Mr. Reitberg's gun license, which is that there was testimony in the record that the gun license was issued in a way that it would not normally have been without the influence of grants. Was he eligible? Well, your honor, there was paperwork that was missing from the file. And the testimony was that a gun license would not be approved without that paperwork. For example, that there needs to be tax returns to establish that he in fact has the kind of employment that requires him to have a full carry license, because that was what he was applying for, which is a license to carry a gun on him at all times, which is a very difficult type of license to get and very rarely issued. Was there testimony, though, that he was not eligible? I mean, I certainly agree that a carry license is special and that the supporting paperwork needs to be in order and the showing needs to be made that carrying a firearm is required by the person's profession. But is there any indication of the record that he was in fact ineligible? Well, your honor, he was not eligible until the until the requisite paperwork was provided in the file. And that's you can look at the testimony of Ochetal on pages 19, 19 through 20. Also, as the court is a step forth in multiple cases, it doesn't matter ultimately if the official who made the decision on this pending matter would have made the same decision after the bribe. That's not the test for official action. The question is just whether the bribe was part of what was influencing the officer at the time. Well, let me let me interrupt again, because I'm just looking at the language in silver that discusses the as opportunities arise theory as it was applied in silver. And what our court said there is the payor must promise to take the payee, I guess, must promise to take official action on a particular question or matter as the opportunity to influence that same question or matter arises. I'm having difficulty understanding how when all these gifts and payments were made and an application was even pending. What what in the record to the jury have relied on to consider that a particular question or matter that the officers would take action with respect to? Was it just like a kind of thing that they could do or was it was there any evidence in the record that suggested a gun permit would be among the kinds of things that Mr. Reichberg would ask for consideration? Yes, Your Honor, there were multiple phone calls that were part of the record between Reichberg and Grant that were about the gun license. The calls were primarily about the gun license for Jonah Reckness and Grant was talking about all of the actions he was taking, how he was, quote, busting balls at the license division to get it done. And he was dissatisfied because Mr. Reckness had not done what he needed to do. And as part of those calls, those calls were also where Grant was complaining that Reichberg and Reckness were no longer showering him with the same types of gifts that they used to shower him with because they had moved on to other officers. And so I think that that does show that this is a particular. That were those calls. When were those calls? I don't have that date in my chronology here. Yes, Your Honor, one moment, I'm going to get to them. So we put them in the supplemental appendix. And those calls are. I just want to get to the date for you. Thank you. It's supplemental appendix 95 is is the call and. One moment, Your Honor. So those calls are in. 2015, Your Honor, they were in early 2015. OK, thank you. But the gun license is granted and. It was applied for in 2014. Yes, but there were there were actually two gun licenses at issue in this case. There was Mr. Reichberg's gun license, which was approved. And then similarly, they made an application for a gun license, the same type of gun license for Mr. Reckness. And that is the gun license that was being discussed in these calls, although. Grant also refers back to having essentially assisted essentially to to Reichberg's gun license. I also want to make the point, Your Honor, that with respect to official action, we only need we presented six different types of proposed official actions to the jury. But we only need to establish one and that the requisite particularity is set forth in silver existed with respect to one. So if I can return to the question on silver that was raised that we kind of got diverted from. So if the court looks at the at the jury instructions delivered here, they were the jury was properly instructed on the as opportunities arise theory. Judge Woods instructed the jury that they needed to find particular that that at the time that the that the pride was made or promise. That there were particular kinds of influence that were anticipated that the on on on pending questions or matters that is the framework that is set forth in silver. It is an appropriate definition of official act. In addition, Judge Woods instructed the jury that simply seeking generalized goodwill or generalized access was insufficient. And so the jury here, first of all, was properly instructed. And then secondly, requires an understanding of the matter to be influenced. Right. So is this instruction, you think, good enough to convey that? I think it is, Your Honor. And in fact, in in in silver, in a footnote, the court essentially approves an instruction that is nearly identical to the instruction that Judge Woods gave to the jury in this case. And that is an instruction that the Second Circuit had approved in Ghanem and in a series of cases. And in silver, the court recognized that that is the type of instruction that would explain the requisite particularity to the jury and the and the record and the evidence was sufficient for the jury to find the kind of particularity required by silver. It says that it would be sufficient that the defendant's consideration understood that the public official was expected as a result of the payment to exercise particular kinds of influence as specific opportunities arose. So what what in 2014 when they started making gifts of this type or 2013, what were the particular kinds of influence that Yes, Your Honor. So so so I think that the record shows a number of ways that you can show what what types of influence they meaning Reichberg and Reckness had in mind at the time that that they were paying bribes. So first of all, you have the testimony of Jonah Reckness, who said the things that we talked about were police escort and assistance following arrest. And it's actually very unusual to have that type of co-conspirator testimony. And in fact, the evidence of that type of understanding is usually much more circumstantial, such as the evidence was in silver. So that's one direct form of evidence that you have here in this case. The second type of evidence that we have is wiretap calls, as I was just discussing. There are calls in which they discuss the officers providing assistance after the arrest. So that corroborates and shows that that is the type of assistance they were asking for from the police. There are the calls about gun licenses, as we've discussed, and there were also a call about between Reichberg and Reckness about the fact that in exchange for all of the bribes they paid the banks in Harrington that they got grant promoted. We also have more circumstantial evidence in that there's a pattern of repeated gifts and repeated requests for favors. Favors is not the best word. Repeated requests for the same type of official action. So what the record showed is that over a series of years, Reichberg and Reckness made bribes to police officers and that in between those bribes, they repeatedly requested the same type of official action. In particular, police escorts, other use of police resources, assistance following arrest. Your adversary is telling us that this is part of community policing, the flyover, the boat, that's part of engagement with the community, that the DATs were mandatory for Mr. Zange and Mr. Zankari, and that these were just informational calls that didn't affect the officer's official actions. Mr. Reichberg was eligible and just had his application put at the top of the pile, and so there was no illegal act that was taken as a result. It was informational. Maybe it was a display of influence, but it actually did reflect real influence. What is your answer to that? So first, Your Honor, a properly instructed jury found otherwise, and of course this court's review on appeal in that is exceedingly deferential. The jury's verdict shows that they found that there was pressure by higher ranking officers to exert official action. They found that the police officers had, or at least that Reichberg and Reckness contemplated or conspired to bribe officers to get that official action. There is no requirement that the actions by the officials be illegal. And again, there is no requirement that the actions by the officials be, for lack of a better term, bad policing. What happened here is that there were decisions to be made by the police department. A decision about whether to issue a gun license, a decision about how to use limited police resources, which is the type of official action that was set forth in McDonald itself. And in each of those areas, those concrete areas, decisions on matters and questions that were pending before the police department, the bribe went into the decision making process. And again, I want to say that... You have one minute left. Please wrap up. Yes, Your Honor. I'm happy to address any of the other questions, issues that were raised by my opposing counsel if the court would find that helpful. Could you take a quick minute on Curcio, please? Yes, of course I will. As the court correctly pointed out, this is on plain error review. If there were to be a remand, it would be a limited remand for further development on this question, not a remand for a new trial. But even that limited remand is not necessary because on the record as it currently exists, this court can find that whatever potential conflict there was, that that conflict did not cause Mr. Reitberg any prejudice. The advocacy at trial and prior to trial was incredibly vigorous. There were no avenues of defense arguments or motions that were not pursued by Ms. Necklace. And in addition, the kind of issue that was raised by Mr. Maringolo that Mr. Reitberg could or might have cooperated but for this dual representation is completely speculative. There's nothing to that argument at this point. But more importantly, I think that there is really no identification of any prejudice to Mr. Reitberg that ignored from any potential conflict that Ms. Necklace may have had in particular on plain error review when no one objected to the dual, or I want to put dual in quotes, representation below. Oh, that's a good question. Can I just ask one quick question about defendants? Go ahead. It's hard to met Judge Walker. Thanks. I'm a little bit troubled, I guess, by the government's blanket production of the data that was used to codefendants. And I'm not sure that suppression is the right remedy. But I guess I'd like the government's position as to whether there is a remedy at all. Well, Your Honor, the first thing I want to say is that there is no precedent that production of discovery of which the government was properly in possession even works a Fourth Amendment event, an additional search or an additional censure. So, I think on that, there was no Fourth Amendment violation in that production. And so, for that reason, among others, suppression is not warranted. In addition, the fact that Judge Wood found that the government's overproduction was based on a reasonable misunderstanding and that the government acted in good faith. And for that reason, also, that suppression would not be warranted. I think it is worth pointing out that since that time, the government, the U.S. Attorney's Office as a whole, has adopted a more conservative approach, which is the one that was not taken here, which would be to, unless there is an express waiver from defense counsel, to perform the responsiveness review before producing documents or other materials. But here, the government, in some sense, was in a position in which we knew the responsiveness review would take quite some time, a period of many months. And on the other hand, we're faced with discovery requests from counsel. And so, in an unsettled area of law, given the policy and law that was in place at that time, the government's decision to produce the entirety of the seized electronic materials to all defendants, it was reasonable at the time. Again, as I've said, the U.S. Attorney's Office has since adopted a more conservative approach. And I think it's also worth noting that Judge Wood found that the government was operating under a reasonable misunderstanding of the agreement between the parties and that that finding by Judge Wood would be reviewed by this court for clear error. Walter, did you have a question? Yes, two, actually, but on this one, is the point that you're making that the government has, in effect, revisited this whole question and adopted a more conservative approach, an indication of why suppression should not be ordered because it was, or any remedy should be ordered, because, in effect, there's nothing to really castigate the government for, given the circumstances, and therefore, there's no deterrence. There would be no deterrent effect. Yes, exactly, Your Honor. And it's also worth noting that there was no strategic advantage to the government in its act of production. Right. Now, my other question had to go back to the Curcio, and that was a question of when the defense became aware of the representation of Huberfeld by Ms. Nicklaus. Your Honor, it's hard, from my standpoint, to put myself inside Ms. Nicklaus' head about when she became aware. And I also was not counsel of record in the Seabrook and Huberfeld case, so I want to speak very specifically about what I know. So, Ms. Nicklaus said on the record in the Reichberg case that she had, I think it's quote, assisted before trial. There was no further development about what that assistance was. I'm sorry. Assistance before trial in Huberfeld. Correct. That is correct, Your Honor, that she had assistance before trial in Huberfeld. When did she make that known in this trial? Your Honor, let me see if I can find, my apologies, let me see if I can find the date of that. I don't know if you know a specific, was it before the trial, during the trial? It was before trial. It, in fact, came up in this discussion of the Fourth Amendment issue because, as is clear from the record, the documents that were, or the overproduction, at least some part of it, was also made to the defendants in Huberfeld and Seabrook. And so I believe that that is the context in which Ms. Nicklaus made this statement, but it certainly was not in the midst of trial, Your Honor. Right. But nobody raised the issue, she wouldn't have presumably raised it if she didn't think it was consequential, but nobody else raised the issue of the potential conflict at that point. No, that's correct, Your Honor. And also the record should be clear that the government was, you know, did raise a separate potential conflict issue. And so, you know, of course, that doesn't answer the question here, but it just shows that, of course, you know, conflicts were something that were on everyone's mind, and Ms. Nicklaus never herself raised the issue of the potential dual representation or conflict. Right. Your position is the government wasn't in the business of hiding conflicts. That's correct, Your Honor. We would certainly not be in the position of hiding conflicts because the last thing we would want to do is have to retry a defendant for an issue that could have been dealt with had anybody raised it pre-trial. Right. Judge Walker, do you have another question or shall we let Ms. Lonergan return to her seat? I'm finished. All right, very good. We'll hear from Mr. Marengola then. I'll be very brief on the Curcio issue, and I thank my opposing counsel for laying a few things out for the court. The court, meaning the district court, has an independent duty to inquire about Curcio. I mean, I'm not an expert, but over the course of the years, I've been involved in 25 Curcio hearings. Every single one of them, the government writes the letter, but it's up to the court. The court has the duty. The court failed to do a Curcio hearing, not the defense counsel or even the government, although the government, in my experience, has always written the letter. I think the Fourth Amendment issue of the suppression that was discussed here, Ms. Necklace, that's when it came up. If it was her duty, she should have done it before. So that's just my point with the Curcio hearing. I think the evidence at trial, and I know the evidence at trial because I was Grant's attorney, that the evidence at trial showed that this friendship between Jeremy Reichberg and Jimmy Grant was prior to the conspiracy starting, during the conspiracy, and it is until this day, and it will be until they die. So if you have a friend who's a cop, there's this common sense, and you're applying for a license or anything, they can call down. There's nothing. This law of honest services and official acts was made not for police officers. This was made for politicians to have put a gun license on top. On the jury instruction argument, just to be clear, is your argument that the instruction given was inconsistent with Silver, or are you just preserving a challenge to Silver? We're preserving it, but I'm just giving you the common sense, what happens in the real world. This is not an official act, number one. Number two, if you look at – and my opposing counsel did not bring up the Rule 16 argument, nor I did. But if you look at the Rule 16 argument very briefly, the government did not turn over all the evidence from the licensing division during our trial. So we don't know if Jeremy Reichberg's license was there or was not there because there were missing documents from the sister case with the gun license. And I think, Your Honors, Resnick said that he paid for access, but there was no connection whatsoever between the gifts and the acts. All the gifts for supposedly Grant was in 2013. And then counsel said that they were busting BALLS. During the trial, they were chop busting. That's what I use. They do bust BALLS. But that's what friends do, and that was caught on the wiretaps. And I just think that the gun license, it's an inflammatory thing, and I understand the government, they're excellent lawyers. But it's just not an official act, and you cannot tie any gifts to that act. And nothing was done wrong if you put it on top. I mean, it's done every day. And that's not an official act. I'll just look at my notes, and I believe I'm done. Thank you so much. Very good. Thank you very much. Well argued. We will take the matter under advisement. Okay. Be safe and have a great day. Bye-bye.